UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHARON M. CARPENTER, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | CASE NO. 05-CV-652-FHM |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| DEFENDANT. | ) | |

## ORDER

Plaintiff, Sharon M. Carpenter, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as

---

[1] Plaintiff's May 5, 2003 application for Supplemental Security Income benefits and her May 23, 2003 application for Disability Insurance benefits were denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held December 8, 2004. By decision dated May 26, 2005, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on September 16, 2005. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995); *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991).  Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495 (10th Cir. 1992).

Plaintiff was born April 22, 1978, and was 26 years old at the time of the ALJ's decision. [R. 16, 486].  She claims to have been unable to work since July 2001, due to "continuous back problems" [R. 59]; depression and anxiety [R. 496]; right shoulder, arm and hand pain [R. 499]; as well as headache and side effects from pain medication [Plaintiff's brief, p. 3-4].  The ALJ determined that Plaintiff has mild mental retardation which is a severe impairment [R. 19] but that she retains the residual functional capacity (RFC)  to understand, remember and carry out simple but not detailed tasks with routine supervision. [R. 21].  Based upon the testimony of a vocational expert (VE) the ALJ found that Plaintiff is unable to return to her past relevant work (PRW) but concluded that there are other jobs in the economy in significant numbers that Plaintiff could perform with her RFC. [R. 21, 23].  He concluded, therefore, that Plaintiff is not disabled as defined by the Social Security Act.  The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts four errors of the ALJ on appeal: 1) that he failed to perform a proper determination at step two; 2) that he failed to perform a proper determination at step three; 3) that he failed to perform a proper credibility determination; and 4) that he failed to perform a proper step five determination. [Plaintiff's Brief, p. 1-2].  For the reasons discussed below, the Court affirms the decision of the Commissioner.

### Step Two Determination

Plaintiff's first statement with regard to the ALJ's step two findings is a pronouncement that the mental CE who examined Plaintiff found her IQ of 63 placed her in the extremely low range of intellectual ability. [Plaintiff's brief, p. 2].  The report to which Plaintiff cites is a report by William L. Cooper, Ph.D., a clinical psychologist, who examined Plaintiff on October 10, 2003. [R. 445-446].  Dr. Cooper reported that the WAIS-III verbal IQ score of 63 placed Plaintiff in the extremely low range of intellectual ability, while her performance IQ score of 74 fell in the borderline range. [R. 446].  Plaintiff's full scale IQ was assessed at 65. *Id.*

In her brief, Plaintiff cites only the lowest IQ score but it is not apparent from Plaintiff's argument what conflict she contends exists between the IQ test results and the ALJ's determination that Plaintiff has a severe mental impairment of mild mental retardation.  Defendant responds that the ALJ properly determined Plaintiff's mental impairment is severe based upon her IQ scores. [Defendant's brief, p. 3].  The Court agrees.  The ALJ's decision reflects that he evaluated the severity of Plaintiff's mental impairment at step three under the listing for individuals with IQ scores between 60 and 70. [R. 19].  This comports with the consultative examiner's IQ score assessment.  The record contains no medical evidence that contradicts or conflicts with this assessment.  Therefore,

3

the ALJ's determination at step two with regard to Plaintiff's mental impairment is based upon substantial evidence.

Plaintiff also complains that the ALJ failed to explain why he found her back complaints to be nonsevere. [Plaintiff's brief, p. 2]. Review of the ALJ's decision reveals otherwise. After a detailed summary of Plaintiff's medical treatment records, including emergency room reports of back pain from lifting her fifty pound child, and the consultative examination reports by Moses A. Owoso, M.D., and Anil K. Reddy, M.D., the ALJ stated that the record contains no objective findings to show the limitations Plaintiff alleges. [R. 19]. Contrary to Plaintiff's allegation, the ALJ did not note that Plaintiff had been fired from a job because of back pain. [Plaintiff's brief, p. 2]. He acknowledged the history Plaintiff gave the consultative examining physicians that she had been fired after she took time off to have a small cyst removed from her neck [R. 18] and noted her testimony that she was laid off due to missing work for that surgery, not because of inability to do the work [R. 21].

Plaintiff contends the ALJ ignored her medical records that demonstrate malignant, histiocytosis X which was treated by chemotherapy and radiotherapy.[2] [Plaintiff's brief, p. 2]. The records to which Plaintiff refers are treatment records from 1979 through 1983 documenting diagnosis of and treatment for histiocytosis when Plaintiff was 19 months old. [R. 94-114]. Nothing in these records suggests that the condition continued beyond Plaintiff's childhood or that she suffered a relapse. In fact, a follow-up report in 1986 reflected history of histiocytosis X in remission, Plaintiff was doing well in school with no

---

[2] Histiocytosis is characterized by an abnormal increase in the number of certain immune cells, also known as Langerhans cells, which form tumors. In children, histiocytosis X usually involves the bones and may consist of single or multiple sites. *See Medline Plus Medical Encyclopedia*, online at http://www.nlm.nih.gov/medlineplus/ency/article/00068.htm. *See also Dorlands Ill. Medical Dictionary*, 28th ed. 769 (1994).

complaints of pain, that she was very active and doing cartwheels in the examining room. [R. 289].    Plaintiff cites to x-ray evidence of a "collapsed T-11 vertebra" as support for her contention that the ALJ ignored pertinent medical evidence in the record with regard to her allegation of disabling back pain. [Plaintiff's brief, p. 2-3].  This x-ray was performed in 1992 when Plaintiff was 14 years of age and complaining of intermittent back pain. [R. 297]. However, Plaintiff's treating physician found no back abnormality, no scoliosis or kyphosis and spoke with Plaintiff's father about the radiologist's report of mild compression of T-11 stating: "Feel it is of no functional significance." [R. 288].  The ALJ noted Plaintiff's history of surgery and removal of a tumor when she was 19 1/2 months old. [R. 16].  Because these records neither support Plaintiff's claim of disability nor provide evidence regarding Plaintiff's functional limitations as of July 2001, Plaintiff's alleged onset date, there was no requirement for the ALJ to discuss them. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir.2004) (ALJ is not required to discuss every piece of evidence; rather, ALJ must discuss the evidence supporting his decision, the uncontroverted evidence he chooses not to rely upon, and any significantly probative evidence he rejects).

Contrary to Plaintiff's allegation, the ALJ considered the report by Dr. Reddy on September 28, 2004. [R. 18].  Although the checklist form filled out by Dr. Reddy does indicate moderate to severe spasm, kyphosis, tenderness  and pain, the findings are not supported by medically acceptable clinical and laboratory diagnostic techniques. *See* SSR 96-2p, 1996 WL 374188, at *2; 20 C.F.R. § 404.1527(d)(2).  [R. 467-471].  "Where a doctor's report is comprised solely of boxes checked on a form, the evaluation form, standing alone, unaccompanied by thorough written reports or persuasive testimony, [is] not substantial evidence." *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir.1987). Nor is

5

there any evidence that Dr. Reddy saw Plaintiff more than once, thus she does not qualify as a treating physician. *See Doyal v. Barnhart*, 331 F.3d 758, 762-63 (10th Cir.2003) ("Absent an indication that an examining physician presented the only medical evidence submitted pertaining to the relevant time period, the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." The ALJ was required to consider the report, which he did. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir.1996) (record must demonstrate that the ALJ considered all of the evidence).

Furthermore, Dr. Reddy's report is inconsistent with the essentially normal findings reported by Dr. Owoso on August 21, 2003. [R. 438-443].   Resolving conflicts in the medical evidence is a task allocated not to this Court but to the ALJ. *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988); *Gay v. Sullivan*, 986 F.2d 1335, 1341 (10th Cir. 1993) (the ALJ, not the court, weighs competing medical evidence).

It is also clear from the ALJ's written decision that he considered the report of Frank J. Ungerland, D.C. [R. 20].   As noted by the ALJ, a chiropractor is not an acceptable medical source as defined in the regulations. 20 C.F.R. § 404.1513(a). A chiropractor's opinion may corroborate the findings of a treating physician, *see Frey v. Bowen*, 816 F.2d 508, 514 (10th Cir.1987), or show how an impairment affects a claimant's ability to work, see 20 C.F.R. § 404.1513(e).   A chiropractor's opinion by itself, however, cannot provide the objective medical evidence necessary to establish a pain-producing impairment.  *Id.*  The ALJ was not required to give  deference to the chiropractor's opinion.

6

Nothing in the medical record overwhelmingly contradicts the ALJ's step two finding that Plaintiff's back problems are not severe. The step two severity determination is based on medical factors alone, and "does not include consideration of such vocational factors as age, education, and work experience." *Williams*, 844 F.2d at 750 (emphasis added). Plaintiff failed to make a threshold showing that her ability to do basic work activities is impaired by back pain. *Id.* at 751.

The same is true of Plaintiff's claims of shoulder and hand impairments. Plaintiff reported right hand pain in March 2002 after hitting a wall and in April 2002 after hitting a car. [R. 221, 225]. She also reported arm and hand injuries when she fell out of a seat on a bus in January 2003. [R. 238, 245, 312]. There are no more such complaints recorded by medical care providers after February 2003. [R. 307-308]. Nor is there any suggestion in the medical record that Plaintiff's functional abilities were affected in the long-term by these injuries.

The record does contain documented complaints of headache and ear pain in March 2001 [R. 197, 204, 356]; stress related headaches in November and December 2001 [R. 217, 334, 335-340]; and headache from sinus infections in July and August 2001 and in January 2002 [R. 313, 345, 346]. Plaintiff reported her headaches were controlled with medication in December 2001 and January 2002. [R. 331, 332]. No headaches were reported in 2002 except on one occasion when Plaintiff hit her head while getting her son out of the car in June 2002. [R. 315, 320, 324]. Other than the headache reported after hitting her forehead during the bus accident in January 2003, there are no further complaints of headache recorded in the medical reports. [R. 312]. Plaintiff did not list headaches as one of her impairments in her application papers or at the hearing.

7

The Court finds no error on the part of the ALJ by not including headaches as a severe impairment at step two.

As to side effects from medication, on November 7, 2001, Plaintiff reported Midrin helped with pain but Flexeril made her drowsy. [R. 339]. By December 6, 2001, she was no longer taking the medication. [R. 334]. Plaintiff reported that Zomac prescribed for pain made her drowsy and dizzy on December 10 and 14, 2001, but that "midrin worked in [the] past." [R. 332, 333]. On January 9, 2002, Plaintiff reported the midrin "knocked her out." [R. 331]. No complaints of side effects from medication are reported in the medical record after that date. Again, the Court finds no basis for requiring the ALJ to include side effects of medication as a severe impairment at step two.

The Court concludes the ALJ properly considered the evidence and determined the severity of Plaintiff's impairments at step two and his finding that Plaintiff has a severe mental impairment of mild mental retardation is supported by the record. The record does not support Plaintiff's allegation that additional impairments should have been found at step two.

## Step Three Findings

In her reply brief, Plaintiff contends that her IQ score "is low enough that with accompanying limitations in paragraph B function can meet or equal Listing § 12.05D." [Plaintiff's reply brief, p. 1]. That listing provides as follows:

> 12.05 *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> *    *    *

8

> D.  A valid verbal, performance, or full scale IQ of 60 through
> 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.05D.[3]

In his decision, the ALJ stated:

> The medical evidence establishes that the claimant has
> exhibited some of the features of the "D" criteria of Listing
> 12.05; i.e., a valid verbal, performance or full scale IQ of 60
> through 70.

[R. 20].  He determined Plaintiff has a mild limitation in "activities of daily living;" a mild

limitation in "social functioning;" a moderate limitation in "concentration, persistence or

pace;" and that there is no evidence of limitation in "deterioration or decompensation." [R.

20].  Plaintiff asserts that the ALJ failed to explain his rating of the four domains of function

under paragraph B contrary to established proper procedure and that the medical evidence

provides conflicting opinions of Plaintiff's functional limitations. [Plaintiff's brief, p. 2; reply

brief, p. 2].

As support for her argument Plaintiff points to a Psychiatric Review Technique form

signed by Janice B. Smith, Ph.D. on November 17, 2003, indicating a moderate degree of

limitation in: 1) Restriction of Activities of Daily Living; 2) Difficulties in Maintaining Social

Functioning; 3) Difficulties in Maintaining Concentration, Persistence, or Pace; and checked

"None" for 4) Repeated Episodes of Decompensation, Each of Extended Duration. [R. 449-

452].

---

[3]  This listing contains the same functional criteria that are required under paragraph B of the
other mental disorders listings. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 *Mental Disorders.*

What Plaintiff failed to mention was that Dr. Smith wrote under the portion of the form provided for comments:

> Measured IQ scores were VIQ 63 PIQ 74 FSIQ 65.  She was able to understand simple questions and follow simple directions.

[R. 452].  Dr. Smith also filled out a Mental Residual Functional Capacity Assessment form. [R. 455-457].  She checked the "Markedly Limited" boxes for the ability to understand and remember detailed instructions, to carry out detailed instructions and to interact appropriately with the public." *Id.*  As explanation for her findings, she wrote:

> Claimant is able to understand, remember, and carry out simple, but not detailed, tasks under routine supervision.  She is able to complete a normal work day and work week from a mental standpoint, and she can adapt to a work setting.  She can relate to the general public about matters that are consistent with her cognitive abilities, and she is able to relate appropriately to coworkers and supervisors for work purposes.

[R. 457].

Another agency expert, Paula Monroe, Ph.D., signed a Mental Medical Source Statement on May 5, 2004, in which she checked off the same marked limitations as those determined by Dr. Smith and also checked moderate limitations on ability to sustain an ordinary routine without special supervision and ability to set realistic goals or make plans independently of others. [R. 458-460].

The ALJ presented the limitations as set forth by Dr. Monroe in his third hypothetical to the Vocational Expert (VE) at the hearing and identified it by exhibit number. [R. 510]. He elicited testimony from the VE that, even with these limitations, there would be no impact upon the list of jobs the VE had previously identified as available to Plaintiff. [R. 510-511].  It is clear, therefore, that the ALJ did not ignore this evidence, as Plaintiff claims.  An

10

ALJ is not obligated to discuss every piece of evidence. *See Clifton*, 79 F.3d at 1009-10. *See Also Seever v. Barnhardt*, 188 Fed.Appx. 747, 2006 WL 1902066 (10th Cir. 2006) (unpublished) (ALJ's failure to discuss a physician's opinion in written decision held to be harmless error where ALJ asked VE at the hearing to consider an individual with work-pressures limitations as set forth by that doctor in determining what jobs were available) (citing *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir.2005) (quotation omitted).

The ALJ discussed all of the relevant medical evidence in some detail. Contrary to Plaintiff's suggestion, the ALJ did provide sufficient rationale for determining the weight he accorded the medical evidence. *See Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir.1995) (court does not reweigh evidence or substitute its discretion for that of agency).

As to the discussion of his PRT findings, the Court concludes that while the ALJ might have been more direct in setting forth his findings under each of the domains of the "B" criteria, his decision provides an adequate explanation of his deliberations in that regard. The evidence cited by Plaintiff that she claims supports marked limitations in two domains of function are her subjective complaints which are not supported by the medical evidence and which the ALJ found not totally credible. [R. 20-21]. Under the circumstances of this case, the Court finds any deficiency in the ALJ's written decision regarding the listings criteria does not create a basis for reversal. *See Fischer-Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005) (no basis for reversal if subsequent steps establish that any reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir.2004) ("It may be appropriate to supply a missing dispositive finding under the rubric

11

of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.").

Plaintiff correctly points out in her reply brief that counsel for the Commissioner ignored her allegation of error by the ALJ for failing to identify Listing 12.05C during his analysis of the evidence at step three.  Nonetheless, because this listing requires a "valid verbal, performance, or full scale IQ of 60 through 70 <u>and</u> a physical or other mental impairment imposing an additional and significant work related limitation of function" (emphasis added) and because substantial evidence supports the ALJ's determination that Plaintiff has no other physical or mental impairment as required by the listing, Plaintiff's allegation of reversible error on this issue is without merit. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C.

## **Credibility Determination**

Plaintiff first complains the ALJ did not link his credibility findings to substantial evidence or explain why the specific evidence relevant to each factor led him to conclude her subjective complaints were not credible.  The Court disagrees.  In his written decision, the ALJ properly linked his credibility findings to the record.  He discussed Plaintiff's testimony, the medical evidence, including statements recorded by the consultative medical experts, Plaintiff's daily activities and other evidence in the record in determinating Plaintiff's claim that she cannot engage at all in any work activities is not totally credible. [R. 20-21].  After review of the record and Plaintiff's testimony at the hearing, the Court concludes that there is ample evidence in the record

12

to support the ALJ's conclusion that Plaintiff exaggerates her symptoms and limitations. See S.S.R. 96-7p, 1996 WL 374186, at *4 (July 2, 1996) (Based upon his evaluation of the entire case record, the ALJ "may find all, only some, or none of an individual's allegations to be credible."). In particular, the Court notes Plaintiff's testimony that she had not driven since 2001, that she could not hold a glass of water, reach to get a box of cereal off a shelf or a dress from a closet and that she could not pick up her son [R. 492, 500, 501, 502] conflicts with evidence from various medical care providers that she drove to the appointment and that she was picking up her child and lifting him out of the car when she bumped her head. [R. 324, 445]. She testified that she could not take the bus different places or figure out a bus schedule [R. 507] but she reported an injury while riding a bus in January 2003. [R. 307-308, 312]. She claimed she did not know her birthday, how old she was, how tall she was or what she weighed and that she could not even read the caption under a picture in the newspaper or tell the price of potatoes in the grocery ads. [R. 487, 495]. Besides the apparent implausibility of such allegations, the record shows that Plaintiff worked as a cashier and was fired because she took time off for surgery, not because she could not do the job, she was taking GED classes and, at the hearing she referred to a notebook with written answers at the beginning of her testimony. [R. 81, 84, 487, 489, 491].

The Court concludes that the ALJ provided a sufficient link between the evidence and his determination that Plaintiff's allegations of disabling pain were not totally credible. Contrary to Plaintiff's argument, her subjective claims are not supported by the medical evidence; but the record does contain substantial support for the ALJ's credibility assessment. Therefore, there is no reason to deviate from the general rule

13

to accord deference to the ALJ's credibility determination. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir.2002) (quotation omitted); *James v. Chater*, 96F.3d 1341, 1342 (10th Cir. 1996) (witness credibility is province of Commissioner whose judgment is entitled to considerable deference).

### Step Five Determination

Finally, Plaintiff claims that the ALJ committed reversible error in his step five determination that Plaintiff's RFC included the ability to understand, remember and carry out simple, but not detailed tasks with routine supervision which allowed her to perform jobs as laundry sorter, marker, cafeteria attendant, labeler, sorter and bench assembly. She complains that neither the ALJ nor the VE provided the Dictionary of Occupational Titles (DOT)[4] code numbers for the jobs. However, counsel for Plaintiff has provided the Court with the DOT descriptions for 26 jobs. [Dkt. 22]. Plaintiff argues that she cannot perform any of the jobs identified. [Plaintiff's brief, p. 9-10]. Citing an unpublished case from the Southern District of New York, Plaintiff claims the jobs specifically exclude the bottom 10 percent of the population thereby establishing a conflict between the VE's testimony and the DOT.[5] Plaintiff also asserts a conflict between the DOT and VE's testimony of available jobs arises because Plaintiff "can barely read." As discussed above, the record does not support such an impairment.

---

[4] *Dictionary of Occupational Titles* (U.S. Dept. of Labor, 4th ed. 1991).

[5] The case cited by Plaintiff, *Rijos v. Heckler*, 1985 WL 451 (S.D.N.Y.) refers to the claimant's IQ in the range of "60-39" (sic) as "mild retardation, placing plaintiff in the lower two percent of the general population." The court found the ALJ's discussion of his grounds for finding the claimant had no other impairment was flawed and remanded the case for further hearing regarding the claimant's physical ability to do light work. There is no mention by the court of any conflict between the DOT descriptions of the mental requirements of jobs and the findings of the ALJ on this issue.

Plaintiff claims her RFC excludes all jobs requiring a reasoning level of 2.[6]  Even if this were so, four of the jobs she included in her Exhibits require only a reasoning level of 1: Nut Sorter, 521.687-086; Final Assembler, 713.687-018; Bench Hand, 715.684-026; Assembler, 734.687-018.  In addition, a cursory search of the DOT job descriptions reveals there are more jobs available which require reasoning level 1: Laundry Laborer, 361.687-018; Marker, Packaging and Materials Handling Occupations, 920.687-178; and Labeler, Packaging and Materials Handling Occupations, 920.687-138.  Plaintiff does not contend that she cannot perform jobs requiring a reasoning level of 1.

Plaintiff is correct in her assertion that the ALJ must investigate and elicit a reasonable explanation for any conflict between the DOT and expert testimony before he may rely on the expert's testimony as substantial evidence to support a determination of nondisability. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir.1999). However, under the circumstances of this case, the Court finds no such conflict exists. Contrary to Plaintiff's argument, the VE testified there are 600 local and 46,000 national jobs  available as a labeler, 500 local and 65,000 national jobs available as sorter and 4,000 local and 450,000 national jobs available as assembler [R. 510].  The Court finds this testimony provides substantial support for the ALJ's conclusion that a significant

---

[6]    In addition to the titles and descriptions of occupations, the DOT offers selected characteristics and auxiliary profile data which are contained in a "trailer" appended to each definition. Reasoning levels are found under the General Education Development (GED) section of Appendix C. GED embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development. Reasoning level 2 requires the worker to be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions."  Level 1 requires the ability to "[a]pply commonsense understanding to carry out simple one or two step instructions."

number of jobs exist that Plaintiff can perform with her RFC.  The Court finds there are no unexplained conflicts between the VE's testimony and the DOT.  Therefore, there is no reversible error in this aspect of the ALJ's decision.

Plaintiff's complaint that the ALJ omitted impairments in his hypothetical to the VE is likewise without merit.  The Tenth Circuit has held that in posing a hypothetical question, the ALJ need only set forth those physical and mental impairments which are accepted as true by the ALJ.  See *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990).

### Conclusion

The ALJ's decision demonstrates that he properly considered all of the evidence and the record as a whole contains substantial evidence to support the determination of the ALJ that Plaintiff is not disabled.  Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 12th day of December, 2006.


FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

16